# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,                      Case No. 10-CV-14498

v.                                         Honorable Denise Page Hood

JOSEPH PAUL ZADA and
ZADA ENTERPRISES, LLC,

        Defendants.

_____/

## ORDER GRANTING THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AND NOTICE OF HEARING

Now before the Court is the United States Securities & Exchange Commission's (SEC) Motion for Summary Judgment. The SEC requests judgment against Defendants Joseph Zada and Zada Enterprises, LLC (Zada) on all claims involving Zada's participation in a massive Ponzi scheme. Upon examination of the parties' submissions and oral argument, the Court finds that the SEC has offered overwhelming evidence in support of its motion for summary judgment. Zada offers little or no evidence to contradict the SEC's assertions of fact and conclusions of law. Therefore, the SEC's Motion for Summary Judgment is GRANTED.

**I.    BACKGROUND**

Joseph Paul Zada lead a lavish and extravagant lifestyle. He owned beautiful

multimillion dollar homes in expensive neighborhoods, threw extravagant parties, took amazing trips, and owned luxury cars and equestrian horses. Through his extravagant lifestyle, Zada communicated to potential investors that he had amassed a fortune from investments in the oil industry and numerous personal contacts in the Middle East. Out of the kindness of his heart, he reached out to "working people," telling them that he wanted to help others by extending the blessings that he had in his life.

Zada told investors that he would invest their money in oil and oil-related industries. He promised gains from 15 to 40 percent, with little risk. Zada encouraged his investors to invest as much as they had available, even suggesting that they tap into the equity in their homes or get a cash advance on a credit card. One investor, Detroit Red Wing's Sergei Fedorov, invested more than $40 million. In exchange for their investments, Zada often gave his investors a promissory note. Zada's efforts were extremely fruitful. He began raising funds in the 1990s. During the relevant period between 2006 and 2009, he acquired approximately $20 million.

Despite his promises, Zada used the money raised for purposes other than investing in oil and oil-related industries. The SEC claims the money was used to pay other investors, creditors, and to maintain his lavish lifestyle. When investors would inquire about the status of their investments, Zada would encourage them to allow him

to keep the money a few weeks or months longer so that the investment would yield even greater returns. When investors insisted on the return of their investments, Zada would stall and sometimes give investors fake checks. Some investors filed personal lawsuits against Zada to recover their investments.

The SEC offers the testimony of numerous investors and the testimony of Zada who asserts the Fifth Amendment when asked direct questions about his involvement with the investment scheme. Zada does not contest the SEC's statement of facts.

## II. ANALYSIS

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the burden of proving that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must consider all evidence in the light most favorable to the nonmoving party. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Summary judgment will "be granted against a party, who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 391. A material fact is genuine, and the case is not appropriate for summary judgment, if a reasonable jury could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).

### A. Definition of Securities

The Securities Act provides in relevant part that a security includes "any note, . . . [or] investment . . . ." 15 U.S.C. § 77b(a)(1). The Exchange Act also has a similarly broad definition of security. *See* 15 U.S.C. § 78c(a)(10) (including the terms "any note" and "investment contract"). The Supreme Court has noted that the primary purpose of the Securities Acts is "to eliminate serious abuses in a largely unregulated securities market." *Reves v. Ernst & Young*, 494 U.S. 56, 60 (1990) (quoting *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975)). As such, Congress defined "the term 'security' in sufficiently broad and general terms as to include within that definition the many types of instruments that in our commercial word fall within the ordinal concept of security." *Id.* (quoting *Forma*n, 421 U.S. at 847–48). Here, the SEC argues that Zada's Ponzi scheme fell within the broad definitions of securities under both the Securities Act and the Exchange Act because the investments were "notes" or "investment contracts." The Court agrees.

In arguing that the transactions fell under the definition of security, the SEC highlights that Zada issued numerous promissory notes to his investors. In determining whether a note is a security, the Court must apply the "family resemblance" test by considering: (1) the motivations between buyer and seller to

4

enter into the transaction; (2) the plan of distribution of the instrument; (3) the investing public's reasonable expectations; and (4) whether the existence of another regulatory scheme renders application of the Securities Acts unnecessary. *Reves*, 494 U.S. at 66–67. The Court must "begin with the presumption that every note is a security." *Id.* at 65.

As to the motivation of the parties, the SEC presents overwhelming evidence that Zada's "purpose [was] to raise money . . . finance substantial investments and the [investors were] interested primarily in the profit the note [was] expected to generate . . . ." *Reves*, 494 U.S. at 66. The SEC offers the testimony of numerous investors who indicated that they gave Zada money in order to invest in oil or oil-related industries and that they believed that they would receive significant gains from these investments. Zada does not provide any controverting evidence. Instead, he argues that there is a question of fact as to whether the funds were truly notes or loans because the monies were used for his lifestyle and not to make investments. Essentially, Zada argues that because he misrepresented the intended destination of the monies they do not satisfy the definition of a security. Not so. "It is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security)." *SEC v. Lauer*, 52 F.3d 667, 670 (7th Cir. 1995). Numerous investors provided funds to Zada because

they believed that he would invest the money and that, as a result, they would reap significant returns on their investment. They did not give him money to maintain his lifestyle. Nor did they know that the money was raised to support Zada's lifestyle. The fact that the promissory notes were characterized as "loans" does not change the underlying motivations of the parties: to invest and to profit. "A central purpose of the securities laws is to protect investors and would-be investors in securities markets against misrepresentations." *Id.* at 670. Zada does not present any evidence that would demonstrate that his misrepresentations are exempt.

The plan of distribution likewise weighs in favor of deeming these transactions securities. To satisfy this prong, it is not required that the investments were made on a public exchange; it is sufficient if they were "offered and sold to a broad segment of the public . . . ." *Reves*, 494 U.S. at 68. The SEC argues that, over a period of approximately ten years, Zada solicited a broad range of investors from different states. In response, Zada characterizes these individuals as a small group of friends and acquaintances that do not fall within the definition of the broad public. Zada recruited more than 50 investors. These were individuals from a broad range of backgrounds, from firemen to professional hockey players, who trusted Zada's representations. This is enough. *See SEC v. Mulholland*, 2013 U.S. Dist. LEXIS 35559, 17 (E.D. Mich. Mar. 13, 2013) (unpublished) ("While the 75 investors in this

6

case may not constitute a 'broad segment of the public' when considered in a vacuum, weighed against the fact that those investors were all individuals, and there was no apparent limitation on who could purchase the demand notes, the second *Reves* factor is satisfied."). Zada presents no authority that concludes that the relationship of the buyer to the seller has any bearing on the Court's analysis. Additionally, there is some evidence that some investors had no prior relationship with Zada. The Court finds that the second factor is satisfied.

The third factor speaks to the reasonable expectations of the public. The Supreme Court has "consistently identified the fundamental essence of a 'security' to be its character as an 'investment.'" *Reves*, 494 U.S. at 69. The SEC offers the statements of numerous investors to support its assertion that the investors had a reasonable expectation that the money they gave to Zada was an investment. In contrast, Zada characterizes these transactions as mere loans and points to the language of the promissory notes. Although it is true that the promissory notes characterize the transactions as loans, "Congress' purpose in enacting the securities laws was to regulate *investments*, in whatever form they are made and by whatever name they are called." *Id.* at 61 (emphasis in original). "Reasonable public expectations will govern the characterization, even where the underlying economic realities belie those expectations." *Bass v. Janney Montgomery Scott, Inc*., 210 F.3d

577, 585 (6th Cir. 2000) (citing *Reves*, 494 U.S. at 66–67). SEC offers the statements of numerous investors that testified that they believed the transactions to be an investment in nature. They believed that they would received more than interest on a loan, but rather a return on an investment. Zada offers no evidence to the contrary. The Court considers the substance of the transactions and not the terminology used to classify the transactions.

Finally, the Court will "examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Reves*, 494 U.S. at 67. This factor also tilts in favor of construing these transactions as securities. Zada contends that there is a question of fact as to whether there is another regulatory scheme that protects the investors because many of the "loans" made were backed by mortgages or life insurance policies. However, he provides no evidence that investors were able to recover funds they pulled from their life insurance policies or mortgages once given to Zada. He does not present any evidence that the investments themselves were insured or backed by collateral. The Court is unaware of nor has Zada identified any regulatory scheme that would protect an investor who liquidates his assets to make such an investment. The Court finds that the *Reves* factors weigh

overwhelmingly in favor of characterizing the transactions as securities.[1] There is no genuine issue of material fact.

### B. Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a) of the Securities Act

The SEC argues that Zada and Zada Enterprises violated section 10(b) of the Exchange Act, Rule 10b-5, and section 17(a) of the Securities Act. "Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit manipulative and deceptive practices, or the making of untrue statements of material facts or omitting to state material facts, in the offer or sale, or in connection with the purchase of sale, of any security." *SEC v. Onyx Capital Advisors, LLC*, 2012 U.S. Dist. LEXIS 146388, 12 (E.D. Mich. Oct. 11, 2012) (unpublished). The SEC must show that Zada (1) misrepresented or omitted material facts, (2) in connection with the offer, sale, or purchase of securities (3) with scienter. *Id.* (citing *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)). A fact is material when a reasonable investor would consider the fact important when determining whether to make an investment. *Id.* "Scienter may be established by proof of recklessness—'highly unreasonable conduct which is an

---

[1] Given that the Court finds that the transactions are appropriately considered notes and, therefore, securities, the Court will not reach a conclusion as to whether the investments fall under the definition of investment contracts.

extreme departure from the standards of ordinary care." *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005) (quoting *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)).

The SEC submits numerous statements from investors indicating that Zada made misrepresentations as to the nature of the investments, their return, and his connection to the oil industry. He also failed to disclose facts. Zada's statements were material; the evidence shows that Zada used the funds for his own personal use and never invested the money as he told investors. This is exactly the type of information a reasonable investor would want to know when considering whether to make an investment. Likewise, an investor would consider this information important after an investment was made.

The Court finds that the SEC has presented sufficient evidence for the Court to find that Zada acted with scienter. Zada acquired millions of dollars from investors and used it, not for investments in oil and oil-related industries, but to support his lavish and extravagant lifestyle. Although this evidence alone is sufficient to find that Zada acted with scienter, the Court also draws a negative inference against Zada's assertion of the Fifth Amendment privilege. Zada invoked the Fifth Amendment when asked whether he intentionally defrauded investors and knew that the statements he made were false. The Court, although not required, may in a civil case draw a

negative inference from a party's refusal to "testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). The Court will deem Zada's "[f]ailure to contest an assertion . . . [as] evidence of acquiescence . . . [when] it would have been natural under the circumstances to object to the assertion in the question." *Id.* (quoting *United States v. Hale*, 422 U.S. 171, 176 (1975)). The Court finds that there is more than sufficient evidence that Zada violated section 10(b) of the Exchange Act, Rule 10b-5, and section 17(a) of the Securities Act.

### C. Sections 5(a) and 5(c) of the Securities Act

The SEC further contends that Zada and Zada Enterprises violated sections 5(a) and 5(c) of the Securities Act. "Under Sections 5(a) and 5(c) of the Securities Act, securities must be registered with the SEC before any person may sell or offer those securities. 15 U.S.C. § 77e(a) & (c)." *United States SEC v. Sierra Brokerage Servs.*, 608 F. Supp. 2d 923, 938 (S.D. Ohio 2009). A prima facie case is established by proof that (1) there was no registration statement in effect or filed for the securities, (2) the defendant sold or offered to sell, either directly or indirectly, the securities, and (3) interstate transportation or communication was used in connection with the offer or sale of securities. *Id.* Section 5 is a strict liability offense. *Id.*

The SEC notes that Zada never filed a registration statement with the SEC, offered to sell securities to numerous investors, and used interstate communication or

mail in connection with the offer to sell the securities. Zada does not offer any statement or evidence in opposition to these points. The Court is inclined to agree that the elements of a sections 5(a) and 5(c) violation are met in the absence of any contrary evidence. The SEC is entitled to summary judgment.

### D. Injunctive and Monetary Relief

The SEC asks that the Court permanently enjoin Zada and Zada Enterprises from violating the Securities Acts and order them to pay disgorgement, prejudgment interest, and a civil penalties. It offers to submit a proposed figure by separate motion. Once this issue is resolved, the Court will enter a judgment as to all claims against Zada and Zada Enterprises.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Securities and Exchange Commission's Motion for Summary Judgment [Docket No. 27, filed March 28, 2013] is GRANTED.

IT IS FURTHERED ORDERED that the parties shall appear before the Court on Wednesday, October 9, 2013 at 2:30 p.m. on the matter of damages.

Dated: July 31, 2013          S/Denise Page Hood
                              Denise Page Hood
                              United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2013, by electronic and/or ordinary mail.

                                              S/LaShawn R. Saulsberry
                                              Case Manager