UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Plaintiff,

v.                                                    Case No. 10-CV-14498
                                                 Honorable Denise Page Hood

JOSEPH PAUL ZADA and
ZADA ENTERPRISES, LLC,

      Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S REQUEST FOR DAMAGES**

Now before the Court is the issue of damages following the Court's July 31, 2013, Order Granting the United States Securities and Exchange Commission's ("SEC" or the "Commission") Motion for Summary Judgment and Notice of Hearing. **[Docket No. 34]** The Court noted in its July 31, 2013, Order that the SEC "offer[ed] to submit a proposed figure by separate motion." The SEC filed its Notice Regarding Proposed Monetary Relief on July 30, 2013. **[Docket No. 33]** During the hearing held before the Court on October 9, 2013, the SEC notified the Court that following the filing of the July 30, Notice, an additional investor came to them and said that he had invested $200,000. The Court requested that the SEC file a supplemental Notice to include this additional $200,000 as well as any additional interest. On October 9,

2013, the SEC filed a Supplemental Notice Regarding Proposed Monetary Relief ("Notice"). **[Docket No. 35]** Upon examination of Plaintiff's submissions, the Court finds that the SEC has offered overwhelming evidence in support of its requested relief and judgment. Defendants Joseph Zada and Zada Enterprises, LLC (hereinafter collectively "Zada") have offered no evidence to contradict the Commission's assertions of fact, conclusions of law, and monetary damages figures. For the reasons discussed below, the Court **GRANTS** the Commission's request for damages as calculated in its October 9, 2013, Notice. The Court also **GRANTS** civil penalties in the amount of $56,571,242.99.

**I.    Background**

On November 10, 2010, the SEC filed a Complaint against Zada alleging: (1) violations of sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c); (2) violations of section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1); (3) violations of sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3); and (4) violations of section 10(b) of the Exchange Act 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. **[Docket No. 1]** The SEC requested, among other things, that the Court order Defendants to "disgorge, jointly and severally, their ill-gotten gains, derived directly or indirectly from the conduct complained of herein, together with prejudgment interest thereon" and "pay

an appropriate civil monetary penalty."

On March 28, 2013, the SEC filed a Motion for Summary Judgment. The Court granted this motion on July 31, 2013. In its Order Granting the United States Securities and Exchange Commission's Motion for Summary Judgment, the Court specifically detailed the facts of this case. The Court incorporates those facts by reference here. **[Docket No. 34, July 31, 2013]** The Court notes that the SEC presented sufficient evidence for the Court to find that Zada acquired millions of dollars from investors and used it, not for investments in oil and oil-related industries as he had promised, but to support a lavish and extravagant lifestyle. Zada began raising funds in the 1990s and during the relevant period—between 2006 and 2009—acquired over $20 million. The SEC offered testimony from numerous investors as well as the testimony of Zada, who asserted his Fifth Amendment privilege when asked direct questions about his involvement with the investment scheme. Zada did not contest the SEC's statement of facts.

In its Motion for Summary Judgment, the SEC again asked the Court to permanently enjoin Zada from violating the Securities Acts and order Defendants to pay disgorgement, prejudgment interest, and civil penalties. On July 30, 2013, the Commission filed a Notice Regarding Proposed Monetary Relief, which it supplemented—based on information learned after the initial filing—on October 9,

3

2013. **[Docket No. 35]** Now before the Court is the SEC's request for judgment against Defendants Zada in the amount of $56,571,242.99, with an additional $8,515,255.04 in prejudgment interest, and a civil penalty to be determined by the Court.[1] **[Docket No. 35, filed October 9, 2013]**

II.   ANALYSIS

    A.   **Disgorgement**

        1.   **Standard**

Disgorgement is an equitable remedy which removes ill-gotten gain by forcing surrender of profits. *United States v. Universal Servs. Mgmt. Inc.*, 191 F.3d 750, 760, 763 (6th Cir. 1999). The purpose of disgorgement is not to compensate the victims of fraud, but to deprive the wrongdoer of his ill-gotten gain. *Id.* at 763-64. Once the

---

[1] Defendants have not responded in writing to the Notice filed by the Commission as to the amount of disgorgement and whether civil penalty should be imposed. However, Defendants did note at the October 9, 2013, hearing, that they have found it imprudent to actively defend against this case because of possible criminal prosecution. At the hearing, the Court was notified that Defendant, Joseph Zada, was charged by federal indictment in the state of Florida. **[13-CR-80173-KAM]** Defendants stated that they did not think punishment was appropriate at this time and that if Mr. Zada is convicted in Florida, he would be reprimanded there. Defendants asked the court to allow the matter of punishment to be addressed in the criminal court. As to civil penalties, Defendants asked that the Court not grant civil penalties but, if the court must, Defendants asked that they be nominal. The Commission responded that the most appropriate thing for the Court to do would be to address the penalties now and, if criminal penalties were determined appropriate in Zada's criminal case, the criminal court could take in to account the penalties issued by this Court.

Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by fraud. *See S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985); *See also S.E.C. v. Conaway*, 697 F. Supp. 2d 733, 746 (E.D. Mich. 2010) ("Once the equity jurisdiction of a Court has been invoked on a showing of a securities violation, the Court possesses the necessary power to fashion an appropriate remedy. The Commission may request that the Court order certain equitable relief, such as the disgorgement (giving up) of illegal profits.") (internal citations omitted). The calculation of a Defendant's economic gain does not have to be exact. *Conaway*, 697 F. Supp. 2d at 747. "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged . . . . The amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation.'" *Id.* (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996)).

### 2     Disgorgement Amount Sought

The Commission alleged in the Complaint that from at least January 2006 through August 2009, Zada directly and indirectly raised at least $27.5 million from at least 60 investors by selling them promissory notes and promising the investors that

they could earn as much as 48% on their investments. **[Compl. at ¶ 2-3]** Zada told the investors that he would use their funds for oil-related investments and that he had exclusive access to these investments. **[Compl. at ¶4]** Zada, however, did not use the funds for this purpose. Instead, he operated what the Commission deemed a Ponzi scheme and used at least $12.4 million to pay "interest" and, in some cases, principal to previous investors. He used the other funds to finance his lavish lifestyle and pay personal and other expenses that were wholly unconnected to the promised investments.

In its Notice, the Commission proposed that the disgorgement figure included three components: (1) the net amount that Zada raised from investors from 2006 to 2009, totaling $14,631,242.99; (2) the net amount that Zada raised from Sergei Fedorov, totaling approximately $40,840,000.00; and (3) $1,100,000.00 that Zada raised from investor-deponents before 2006.[2] The Commission determined the total

---

[2] The Court notes that in the Commission's initial Notice Regarding Proposed Monetary Relief, the Commission stated that Zada raised $900,000 from investor-deponents before 2006. **[Docket No. 33, at 2]** Specifically, the SEC stated that Robert Dover and Robert Ross invested approximately $800,000 from 1999-2000, Gordon Drake invested $50,000 in approximately 2005, in addition to $227,000 in 2006, and James Gilliard invested $50,000 in December 2005. In its Supplemental Notice, the Commission noted that an additional investor, Rocco Napoli, claimed to have invested approximately $200,000 in 2005. The Court has added this $200,000 to the third component delineated by the Commission, funds that Zada raised from investors before 2006.

disgorgement amount to be $56,571,242.99, the total of the three components. Because the Court holds that this amount removes Zada's ill-gotten gain, sees no error in the SEC's computation, and Zada has filed no objection to this amount, the Court grants the Commission $56,571,242.99 in disgorgement.

### B. Prejudgment Interest

The Commission also seeks prejudgment interest. A court may add prejudgment interest to a determined disgorgement amount to prevent a Defendant from benefitting from the use of his ill-gotten gains, interest free. *See Conaway*, 697 F. Supp. 2d at 747 (quoting *S.E.C. v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)) (disgorgement is "the amount with interest by which the defendant profited from his wrongdoing"). Most courts use the interest rate applied by the Internal Revenue Service for unpaid balances. *Id.*; *see also S.E.C. v. Bocchino*, WL 31528472, at *3 (S.D.N.Y. Nov. 8, 2002) ("the district court generally calculates prejudgment interest by using the Internal Revenue Service rates for underpayment of taxes under 17 U.S.C. § 201.600(b)"). A decision to award prejudgment interest, and at what rate, is also in the broad discretion of the district court. *Conaway*, 697 F. Supp. 2d at 747 (citing *First Jersey Sec., Inc.*, 101 F.3d at 1476). In deciding whether to award prejudgment interest, this Court considers: (1) the need to fully compensate the wronged party for actual damages suffered; (2) the relative fairness of an award; (3)

the remedial purpose of the statute involved; and (4) other general principles deemed relevant by the court. *Id.* (citing *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 613 (2d Cir. 1994)).

In this case, the Commission seeks prejudgment interest in the amount of $8,515,255.04. The SEC notes that it calculated this prejudgment interest amount on the $56,571,242.99 Defendants raised from August 1, 2009, (the month following the last payment by an investor) through October 9, 2013 (the date of the Supplemental Notice filing). The Court reiterates that it finds the proposed disgorgement calculations appropriate. Based on this finding, the Court also finds the SEC's proposed prejudgment interest calculations on the disgorgement figure from August 1, 2009, to October 9, 2013, $8,515,255.04, appropriate. **[Docket No. 35, Ex. 2]** The Court grants prejudgment interest in the amount of $8,515,255.04.

### C. Civil Penalty

In addition to disgorgement and prejudgment interest, the Commission seeks a civil penalty, given Zada's misconduct. "Since disgorgement merely requires the return of wrongfully obtained profits, it does not impose any meaningful economic cost on the law violator. The Committee, therefore, concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise would provide

great financial returns to the violator." *Conaway*, 697 F. Supp. 2d at 747 (quoting S. Rep. 101-337 (1990), reprinted in 1990 WL 263550 (Leg. Hist.)). The Commission may seek civil penalties for the violation of federal securities laws under Section 20(d) of the Securities Act, Section 209(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act. *U.S. S.E.C. v. C.J.'s Financial*, 2012 WL 3600239 (E.D. Mich. 2012) (unpublished). The criteria for imposing a civil penalty is based upon the Court's discretion in light of the facts and circumstances of each case. *Id.* In *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984), the Sixth Circuit set forth a number of factors which courts are to consider when deciding to issue a permanent injunction: (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances, if any, against future violations; (5) the defendant's recognition of the wrongful nature of his conduct; (6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations; and (7) the defendant's age and health.

The Advisers Act provides for three tiers of penalties based upon the degree of a defendant's culpability. The first tier penalty is permitted for each violation of the law. The second tier is permitted for each violation of the law which involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement.

9

The third tier is permitted if: (1) the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and (2) such a violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.  15 U.S.C. § 80b-9(e).

Based on large amount of funds involved, the egregiousness of Zada's actions, the high degree of scienter, and Zada's apparent lack of remorse or acceptance of fault, a civil penalty under the third tier is appropriate.  The violations in this case were not isolated, but continued over an extensive period of time.  Zada chose to live a lavish lifestyle with the ill-gotten gains of others and has made no assurances that there will be no future violations or recognition of the wrongful nature of his conduct. Regarding the likelihood that Zada's occupation will present opportunities (or lack thereof) for future violations, Zada used his business as a means to collect the funds from those involved.  As to Defendant Zada's age, he is approximately 55 years old and there have been no allegations that he is not in good health.

The Court notes that the Commission has not asserted any specific amount and instead simply requests that the Court give Defendants a "substantial civil penalty." Additionally, the Court notes that it may grant a third-tier penalty if it determines that the Defendants' conduct involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and if the violation "directly or

indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *See* 15. U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii). The court also notes that "the amount of penalty for each such [third-tier penalty] violation shall not exceed the greater of (I) $100,000 for a natural person or $500,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 78u(d)(3)(B)(iii).

In this case, the Court determined that Zada engaged in a lengthy scam in which he raised a large amount of money, promising returns on investments that he never made, and lived a lavish lifestyle with his ill-gotten gains. The Court notes that Defendants stole millions of dollars and Defendant Joseph Zada has accepted no responsibility for his misconduct. Zada's lack of acceptance of responsibility, in addition to the egregiousness of the offenses and the large amounts of money that he stole, strongly support a substantial civil penalty. Therefore, the Court grants the Commission third-tier civil penalties in the amount of $56,571,242.99.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants Zada and Zada Enterprises, LLC remit disgorgement payment to the United States Securities & Exchange Commission in the amount of $56,571,242.99, with an additional $8,515,255.04 for prejudgment interest.

**IT IS FURTHER ORDERED** that Defendants Zada and Zada Enterprises, LLC remit payment in the amount of $56,571,242.99 for civil penalties, determined by the Court and reflecting the "gross amount of pecuniary gain to [the] defendant[s] as a result of the violation."

**IT IS FURTHER ORDERED** that the total amount owed by Defendants is $121,657,741.02.

**IT IS SO ORDERED.**

                                              S/Denise Page Hood
                                              Denise Page Hood
                                              United States District Judge

Dated: January 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 31, 2014, by electronic and/or ordinary mail.

                                              S/LaShawn R. Saulsberry
                                              Case Manager