# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: May 21, 2015

Mr. N.C. Deday LaRene
LaRene & Kriger
645 Griswold Street
Suite 1717
Detroit, MI 48226

Mr. Christopher Paik
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

Re:  Case No. 14-1346, *SEC v. Joseph Zada, et al*
Originating Case No. : 2:10-cv-14498

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0099p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    *Plaintiff-Appellee*,

*v.*

JOSEPH PAUL ZADA; ZADA ENTERPRISES, LLC,

    *Defendants-Appellants*.

No. 14-1346

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-14498—Denise Page Hood, District Judge.

Argued: March 12, 2015

Decided and Filed: May 21, 2015

Before: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** N. C. Deday LaRene, LARENE & KRIGER, P.L.C., Detroit, Michigan, for Appellants. Christopher Paik, SECURITIES AND EXCHANGE COMMISSION, Washington, D.C., for Appellee. **ON BRIEF:** N. C. Deday LaRene, LARENE & KRIGER, P.L.C., Detroit, Michigan, for Appellants. Christopher Paik, SECURITIES AND EXCHANGE COMMISSION, Washington, D.C., for Appellee.

---

[*]The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Case 2:10-cv-14498-DPH-RJK ECF No. 44, PageID.1186 Filed 05/21/15 Page 3 of 10
Case: 14-1346  Document: 29-2  Filed: 05/21/2015  Page: 2    (3 of 10)

No. 14-1346                     *SEC v. Zada, et al.*                     Page 2

## OPINION

KETHLEDGE, Circuit Judge. Federal securities laws are broad enough to regulate "virtually any instrument that might be sold as an investment." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). Here, Joseph Zada sold fake investments in Saudi Arabian oil to dozens of unsuspecting victims. The SEC eventually discovered Zada's scheme and filed this civil-enforcement action, alleging that Zada violated provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. The district court granted summary judgment to the SEC, ordering Zada to pay about $56 million in damages and a civil penalty of $56 million more. Zada now argues that the investments he sold were not securities and thus not subject to regulation under the Securities Acts. He also argues that the civil penalty improperly punishes him for invoking his Fifth Amendment privilege against self-incrimination. We affirm.

I.

A.

The SEC's undisputed evidence reveals the following. Zada presented himself to friends and acquaintances as an extremely wealthy man. He owned mansions in Michigan and Florida, hosted extravagant parties, and travelled with bodyguards. Zada offered potential investors an opportunity to share in his apparent wealth: through his connections with royalty in Saudi Arabia, he would combine their money with his to make large purchases of oil that would be stored on offshore tankers. Zada's partners in the Middle East would keep the oil on tankers when prices were low, and sell it when prices were high. Zada told investors they could expect returns of up to 40% in as little as two months. The scheme raised about $60 million from investors in Michigan and Florida, including $40 million from former Detroit Red Wings hockey star Sergei Federov. Other investors included a horse trainer, a plastic surgeon, and several firefighters.

In return for their money, Zada gave the investors promissory notes issued by him or his company, Zada Enterprises. On their face, the notes say nothing about an oil-investment

Case 2:10-cv-14498-DPH-PJK ECF No. 44, PageID.1187 Filed 05/21/15 Page 4 of 10
Case: 14-1346 Document: 29-2 Filed: 05/21/2015 Page: 3 (4 of 10)

No. 14-1346　　　　　　　　　　*SEC v. Zada, et al.*　　　　　　　　　　Page 3

scheme; instead, they say that Zada will pay a principal amount plus interest (at rates far lower than Zada had told the investors). Zada assured the investors that the notes were necessary only to ensure that the investors would be repaid by Zada's family if something happened to him.

Little of what Zada told the investors was true. Zada's connections with Saudi royalty existed only in his imagination. On one occasion Zada invited investors to a party, where he paid actors to pose as a Saudi prince and princess. And Zada never bought any oil; instead, he used the investors' money to pay his personal expenses, which were substantial. For example, Zada spent over $4 million of investors' money to pay his personal credit-card bills. When Zada paid investors anything, he used money raised from other victims.

B.

Zada's scheme eventually came to the attention of the SEC, which filed this civil-enforcement action against Zada and Zada Enterprises (collectively, Zada). *See* 15 U.S.C. §§ 77t(d), 78u(d). The SEC alleged that Zada's scheme violated the anti-fraud provisions of the Securities Acts, *see* 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5, and that Zada failed to register securities in violation of 15 U.S.C. § 77e. During discovery, nine investors testified that Zada had induced them to participate in the scheme described above. Sergei Federov signed an affidavit to the same effect. Zada himself refused to testify, asserting his privilege against self-incrimination. (The government is pursuing criminal charges against him in Florida.) Instead, Zada offered an affidavit from his attorney, which stated that some of the investors had referred to the money they gave Zada as "loans." Zada also offered an affidavit from a former teammate of Federov, who said that Federov had said the money he gave Zada was a loan.

The SEC moved for summary judgment, which the district court granted. The court later ordered Zada to pay a disgorgement award of $56,571,242.99, plus interest, and ordered him to pay the same amount as a civil penalty. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3). In total, the court ordered Zada to pay about $120 million. Zada appeals, challenging the court's summary-judgment decision and the civil penalty.

II.

A.

1.

We review the district court's grant of summary judgment de novo. *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 593 (6th Cir. 2013). Summary judgment is appropriate if there is no genuine dispute as to any material fact. *Id.*

A threshold question for all of the SEC's claims is whether Zada sold "securities" within the meaning of the Securities Acts. Zada says he did not. The SEC responds that Zada sold "notes," which the Securities Acts include on a long list of instruments that are presumptively securities under the Securities Acts. 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). Not every note is a security, however, because the purpose of the Securities Acts is to regulate capital markets, not to "creat[e] a general federal cause of action for fraud." *Reves*, 494 U.S. at 65.

To rebut the presumption that a particular note is a security, a defendant must show that the note bears a "family resemblance" to a list of instruments that are not securities. *Id.* That list includes consumer debt, home-mortgage loans, character loans to bank customers, and short-term commercial debt. *Id.* Whether the note bears a resemblance to one of those instruments depends on four factors: first, "the motivation prompting the transaction"; second, the "plan of distribution"; third, the "'reasonable expectations of the investing public'"; and fourth, whether a "risk-reducing factor" (for example, another regulatory scheme) makes "'application of the Securities Acts unnecessary.'" *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 585 (6th Cir. 2000) (quoting *Reves*, 494 U.S. at 66-67).

The first *Reves* factor—the motivations that prompted the buyers to enter into the transactions—turns on whether the buyers' purpose was "investment (suggesting a security) or commercial or consumer (suggesting a non-security)." *Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808, 812 (2d Cir. 1994). Here, the SEC presented testimony from several investors and an affidavit from another, all to the effect that Zada gave them the notes as part of a scheme to invest in Saudi oil. Zada himself offered no testimony to the contrary, since he chose to invoke his privilege against self-incrimination. And this is a civil case, so the district court could infer

Case 2:10-cv-14498-DPH-RJK ECF No. 44, PageID.1189 Filed 05/21/15 Page 6 of 10
Case: 14-1346 Document: 29-2 Filed: 05/21/2015 Page: 6 (6 of 10)

No. 14-1346            *SEC v. Zada, et al.*            Page 5

from Zada's silence that the investors' testimony was true. *See Hoxie v. DEA*, 419 F.3d 477, 483 (6th Cir. 2005).

In response, Zada contends that some of the investors referred to the transactions as "loans," which in his view means the notes are not securities. But the terms are not mutually exclusive. A corporate bond, for example, is both a loan to the corporation and an investment for the lender. Moreover, in determining whether an investment is a security, we look to "economic realities[,]" not to "moniker[s] or label[s]." *SEC v. Wallenbrock*, 313 F.3d 532, 538 (9th Cir. 2002). Thus, what matters is why Zada's investors gave him their money; and it is doubtful that 60 investors—including several firefighters and a horse trainer—would make personal loans to a self-styled multimillionaire. Hence the first factor favors the SEC.

The second factor is the "plan of distribution" for the instruments. If notes are sold to a wide range of unsophisticated people, as opposed to a handful of institutional investors, the notes are more likely to be securities. *See Pollack*, 27 F.3d at 813-14. Here, Zada sold the notes to about 60 people in two states. One was a hockey player; another was a plastic surgeon; another was a firefighter. Thus, Zada sold the notes to a variety of laypersons, which means this factor likewise favors the SEC.

The third factor—the reasonable expectations of the investing public—suggests that notes are securities if a reasonable person would expect the securities laws to apply to them. *Id.* at 814. As shown above, Zada's victims thought they were making lucrative investments in oil, which is traded on global markets. And federal securities laws are broad enough to cover "virtually any" marketable investment. *Reves*, 494 U.S. at 61. Thus, a reasonable person who gave Zada money to invest in oil markets would expect that the securities laws apply to the transaction.

The final *Reves* consideration—whether a risk-reducing factor makes application of the Securities Acts unnecessary—likewise suggests that Zada sold securities. If the notes that Zada gave investors were not securities, then they "would escape federal regulation entirely." *Id.* at 69. Zada responds that he reduced the investors' risk by making some of them beneficiaries of his life-insurance policy and by securing his obligations to other investors with mortgages on his homes. But a life-insurance policy would help Zada's victims only upon his death, and nothing

No. 14-1346            *SEC v. Zada, et al.*            Page 6

in the record suggests that the mortgages secured anywhere near the $60 million that he raised. Hence this factor favors the SEC as well.

In sum, Zada has not presented evidence that would allow a reasonable jury to find that he has rebutted the presumption that the notes were securities. To the contrary, all four factors reinforce that presumption. The notes are therefore securities, which means that Zada was required to comply with the Securities Acts.

2.

That the notes were securities makes Zada liable for failing to register them. *See* 15 U.S.C. § 77e. The district court was therefore correct to grant summary judgment on this claim.

That leaves the SEC's claims for securities fraud. The remaining elements of those claims are the same under both of the Securities Acts: the SEC must show that Zada made material misrepresentations or omitted material facts to the investors; that he made the misrepresentations or omissions "in connection with the offer, sale or purchase of securities"; and that Zada either knew he was misleading the investors or was reckless in doing so. *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005).

Here, as shown above, Zada told investors that he would use their money to buy oil, when in fact he planned to use the money for his own purposes. Zada presents no evidence that would create a genuine issue of fact to the contrary. Thus, on this record, any reasonable jury would find that Zada lied to the investors.

The remaining two elements are virtually uncontested: first, as shown above, Zada made his misrepresentations in connection with the offer or sale of securities; and second, he knew that he was misleading his investors. Indeed that was the point of the misrepresentations. No reasonable jury could find otherwise.

But Zada argues that the SEC did not prove that he lied to every investor. Specifically, he points out that, although the SEC alleged in its complaint that he made misrepresentations to "at least 60 investors," the SEC offered testimony or sworn statements from only 10. But that

No. 14-1346             *SEC v. Zada, et al.*             Page 7

disparity is relevant more to the scope of Zada's "ill-gotten gains," *see SEC v. Monterosso*, 756 F.3d 1326, 1336 (11th Cir. 2014), than to the misrepresentation element of the SEC's claims. To establish Zada's liability under the Securities Acts, the SEC was not required to offer testimony from each of Zada's victims; instead, it was required simply to show that Zada made misrepresentations in furtherance of his scheme. *See George*, 426 F.3d at 797.

Our decision in *George* illustrates the point. There, we affirmed the district court's grant of summary judgment to the SEC in a securities-fraud case where the SEC alleged that the defendants had run a Ponzi scheme that raised $75.8 million from 550 people. 426 F.3d at 788, 791. We treated the fraud as one scheme, without discussing whether the SEC had proved that the defendants made misrepresentations to all 550 investors. *See id.* Instead, we held that summary judgment was proper because the SEC had "establish[ed] all of the securities-fraud elements for each of the defendants individually." *Id.* The SEC has done the same for Zada here; and thus the district court was correct to determine, as a matter of law, that Zada is liable under the Securities Acts.

B.

Zada also challenges the district court's damages award, which we review for an abuse of discretion. *See Monterosso*, 756 F.3d at 1338; *United States v. Gurley*, 384 F.3d 316, 324 (6th Cir. 2004). The district court ordered Zada to pay the SEC about $56 million in disgorgement damages, plus another $56 million as a civil penalty. In support of the disgorgement award, the SEC "needs to produce only a reasonable approximation of the defendant's ill-gotten gains." *Monterosso*, 756 F.3d at 1337 (quotation marks omitted). Once the SEC does so, the defendant bears the burden of proving that the SEC's estimate is unreasonable. *Id.*

Here, the SEC offered an affidavit from Sergei Federov, who said he gave Zada about $40 million to invest; an affidavit from the SEC's forensic accountant, who said Zada's scheme raised another $20 million from 2006 to 2009; and deposition testimony from several investors, who said they had given Zada an additional $900,000. Zada paid back about $5.5 million to investors, which together yields a reasonable estimate that Zada gained about $56 million through his scheme. Zada concedes that he offered no evidence to prove this estimate unreasonable.

But Zada does challenge the civil penalty, which effectively doubles the amount he owes the SEC. In a securities-fraud case, if the defendant's actions "resulted in substantial losses or created a significant risk of substantial losses to other persons[,]" then the court may impose civil penalties up to the greater of $100,000 or "the gross amount of pecuniary gain to [the] defendant as a result of the violation[.]" 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

Here, the district court imposed a civil penalty which equaled the gross amount of Zada's "ill-gotten gain": $56,571,242.99. The court explained that a large penalty was necessary because of "Zada's lack of acceptance of responsibility, in addition to the egregiousness of the offenses and the large amounts of money that he stole." The court also noted "Zada's high degree of scienter," and that Zada's scheme was "not isolated, but continued over an extensive period of time."

Zada argues that, by punishing him for a "lack of acceptance of responsibility," the district court in fact punished him for invoking his Fifth Amendment privilege against self-incrimination. That argument has some force. Under the circumstances here—where Zada had not even been indicted yet for the subject transactions, much less convicted and sentenced—it was unreasonable for the court to expect that he would waive his Fifth Amendment rights. His decision not to testify, viewed realistically, reflects not a denial of responsibility, but a desire to preserve his options in a criminal case that had not yet even begun. That said, the other factors cited by the district court—and the record as a whole—make clear that the court's reference to Zada's "lack of acceptance of responsibility" was not essential to the penalty imposed here. The reference was therefore harmless; and the civil penalty was otherwise not an abuse of discretion.

\*   \*   \*

The district court's judgment is affirmed.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 14-1346

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff - Appellee,

v.

JOSEPH PAUL ZADA; ZADA ENTERPRISES, LLC,

    Defendants - Appellants.

>  FILED
>  May 21, 2015
>  DEBORAH S. HUNT, Clerk

Before: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk